IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

DEBRA KAYE NEAL,
     Plaintiff,

vs.                           Case No.: 3:17cv410/RV/EMT

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,
     Defendant.
_____/

## **REPORT AND RECOMMENDATION**

This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Local Rules 72.1(A), 72.2(D) and 72.3 of this court relating to review of administrative determinations under the Social Security Act ("Act") and related statutes, 42 U.S.C. § 401, *et seq*. It is now before the court pursuant to 42 U.S.C. § 405(g) of the Act for review of a final determination of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Act, 42 U.S.C. § 401–34.

Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

## I.    PROCEDURAL HISTORY

On April 12, 2013, Plaintiff filed an application for DIB, and in the application she alleged disability beginning on May 15, 2008 (tr. 21, 250).[1]  Her application was denied initially and on reconsideration, and thereafter Plaintiff requested a hearing before an administrative law judge ("ALJ").  A hearing was held on May 29, 2015 (tr. 21).  On July 1, 2015, Plaintiff amended her onset date to November 20, 2013 (tr. 172).  On August 17, 2015, the ALJ issued a decision in which he found Plaintiff "not disabled," as defined under the Act, at any time through the date of his decision (tr. 21–29).  Next, on May 16, 2017, the Appeals Council denied Plaintiff's request for review (tr. 2).  Thus, the decision of the ALJ stands as the final decision of the Commissioner, subject to review in this court.  <u>Ingram v. Comm'r of Soc. Sec. Admin.</u>, 496 F.3d 1253, 1262 (11th Cir. 2007).  This appeal followed.

---

[1] All references to "tr." refer to the transcript of Social Security Administration record filed on September 25, 2017 (ECF No. 9).  Moreover, the page numbers refer to those found on the lower right-hand corner of each page of the transcript, as opposed to those assigned by the court's electronic docketing system.

Case No.: 3:17cv410/RV/EMT

## II.    FINDINGS OF THE ALJ

On August 17, 2015, the ALJ made several findings relative to the issues raised

in this appeal (tr. 21–29):

1)    Plaintiff last met the insured status requirement of the Act on December 31, 2013[2];

2)    Plaintiff did not engage in substantial gainful activity during the period from her initial alleged onset date of May 15, 2008, through her date last insured;

3)    Through the date last insured, Plaintiff had the following severe impairments: hypertension, hypothyroidism, obesity, mild lumbar degenerative disc disease ("DDD"), and lumbar facet disease;

4)    Through the date last insured, Plaintiff had no impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

5)    Through the date last insured, Plaintiff had the residual functional capacity ("RFC") to perform the full range of medium work as defined in 20 C.F.R. § 404.1567(c);

6)    Through the date last insured, Plaintiff was able to perform her past relevant work as a real estate agent, as such work did not require the performance of work-related activities precluded by her RFC;

7)    Plaintiff was not under a disability, as defined in the Act, at any time between May 15, 2008, the initial alleged onset date, and December 31, 2013, the date last insured.

## III.    STANDARD OF REVIEW

---

[2] Thus, the time frame relevant to this appeal should be essentially one month, from November 20, 2013 (alleged onset) through December 31, 2013 (date last insured), but the ALJ considered Plaintiff's claim as though it dated back to May 15, 2008, her original alleged onset date (*see* tr. 21).

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."); *see also* Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles." Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds as stated in* Elam v. R.R. Ret. Bd., 921 F.2d 1210, 1214 (11th Cir. 1991). As long as proper legal standards were applied, the Commissioner's decision will not be disturbed if in light of the record as a whole the decision appears to be supported by substantial evidence. 42 U.S.C. § 405(g); Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998); Lewis, 125 F.3d at 1439; Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995). Substantial evidence is more than a scintilla, but not a preponderance; it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); Lewis, 125

F.3d at 1439.  The court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted).  Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence.  Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).

The Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do her previous work, "but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  Id. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)–(g), the Commissioner analyzes a disability claim in five steps:

1.  If the claimant is performing substantial gainful activity, she is not disabled.

2.  If the claimant is not performing substantial gainful activity, her impairments must be severe before she can be found disabled.

3.      If the claimant is not performing substantial gainful activity and she has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if her impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.      If the claimant's impairments do not prevent her from doing her past relevant work, she is not disabled.

5.      Even if the claimant's impairments prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates her RFC and vocational factors, she is not disabled.

The claimant bears the burden of establishing a severe impairment that keeps her from performing her past work.  20 C.F.R. § 404.1512.  If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.  MacGregor  v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, the claimant must then prove she cannot  perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

IV.    BACKGROUND

This case comes before the court with an unusual backdrop. As noted above, Plaintiff amended her onset date in this case to November 20, 2013, or slightly more than one month prior to the expiration of her insured status for DIB purposes. And in amending her onset date, Antonio Bruni, the attorney who represented Plaintiff at her hearing before the ALJ (*see* tr. 44), advised the ALJ as follows:

> [Plaintiff] would first like to formally move to amend her onset date to November 20, 2013, consistent with Exhibit 14F, page[s] 30–32 [tr. 446–48], which is when [Plaintiff] began routine treatment for her hypertension, knee pain, back pain, fatigue, anxiety, high cholesterol and cervicalgia with the Escambia Community Clinic. [Plaintiff] is aware she is waiving benefits before that date, but believes that amending her onset date is in her best interest and most consistent with the medical records as a whole.

(tr. 172). Attorney Bruni acknowledged that although Plaintiff's amended onset date was near the end of her insured status, she would nevertheless be entitled to benefits because her impairments were "expected to last" twelve months and thus satisfied the durational requirements for DIB (*see* tr. 172–73 (citing SSR 82-52)). Accordingly, Bruni's arguments focused on the evidence of record from November 20, 2013, forward, and they focused on the seven impairments he identified in his letter to the ALJ (*see* tr. 173).

In contrast, the attorney who represents Plaintiff before this court, Douglas Mohney, presents a wide array of arguments, based on a variety of ailments, evidently

based on an alleged onset date of May 15, 2008, and evidently based on the entirety of the medical evidence of record, which dates back to **2003** (*see* ECF No. 11).

Notwithstanding Attorney Mohney's wide-ranging arguments in the instant appeal, it certainly appears that Plaintiff abandoned any claim to DIB for the time period prior to November 20, 2013, that she acknowledged that the evidence of record fails to establish that she was disabled before then, and that she acknowledged that no good-faith argument exists to assert that she was disabled prior to November 20, 2013. Her first attorney stated as much in his letter to the ALJ (*see* tr. 172). Nevertheless, given that the ALJ—for reasons unexplained—considered Plaintiff's claim as dating back to the initial onset date, the undersigned will do the same in this Report and will address the arguments asserted by both attorneys.

V.   DISCUSSION

A.   ALJ Findings at Step Two

Attorney Mohney contends the ALJ erred at step two of the sequential evaluation in failing to find Plaintiff's irritable bowel syndrome severe and her anxiety and depression severe.

At step two of the sequential evaluation process, the claimant must prove that she is suffering from a severe impairment or combination of impairments, that have lasted (or must be expected to last) for a continuous period of at least twelve months,

and which significantly limit her physical or mental ability to perform "basic work activities." *See* 20 C.F.R. §§ 404.1509, 404.1520(c) 404.1521(a). Basic work activities include physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling, and capacities for seeing, hearing, and speaking, as well as mental functions, discussed more fully *infra*. 20 C.F.R. § 404.1521(b).

### 1.    Irritable Bowel Syndrome ("IBS")

Mohney argues the ALJ erred in failing to find Plaintiff's IBS to be a severe impairment, or to even mention IBS in his decision. Step two is satisfied, however, when the ALJ determines that a claimant has any severe impairment. Thus, any error here in failing to deem Plaintiff's IBS a severe impairment was harmless. Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987) ("[Step two] acts as a filter; if no severe impairment is shown the claim is denied, but the finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement of step two.") (citations omitted); *see also, e.g.*, Burgos v. Acting Comm'r of Soc. Sec., 705 F. App'x 794, 802 (11th Cir. 2017) (same) (citation omitted). What is more, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in the decision," so long as the decision

Case No.: 3:17cv410/RV/EMT

enables a reviewing court to determine whether the ALJ considered the claimant's medical condition as a whole. Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) (citing Foote, 67 F.3d at 1562 (11th Cir. 1995)). Here it is evident the ALJ considered Plaintiff's condition as a whole.

Additionally, the court notes that Plaintiff points to four pages of the medical record in support of this claim—transcript pages 357, 385, 392, and 468—as well as Plaintiff's hearing testimony regarding "chronic constipation," "chronic diarrhea," and daily, unpredictable IBS (see ECF No. 11 at 13). However, the ALJ properly discounted Plaintiff's subjective complaints as not fully credible (see tr. 25–28). Moreover, the other four pages of transcript cited by Plaintiff do not establish that her IBS was a severe impairment, much less that it was a severe impairment during the relevant time frame, as they merely reflect IBS diagnoses—diagnoses that appear to be based largely if not entirely on Plaintiff's statements. More specifically, the transcript pages cited by Plaintiff show as follows: (1) page 385 shows the result of a colonoscopy Plaintiff underwent on **May 29, 2003**, which shows entirely normal endoscopic findings and no need for a follow-up colonoscopy for ten years (it also shows that Plaintiff evidently had the colonoscopy after reporting "alternating constipation and diarrhea," and that her physician assessed her with IBS); (2) page 357 reflects a diagnosis of IBS made by a physician's assistant on **June 23, 2011**,

based only on Plaintiff's statements[3]; (3) page 392 includes an IBS reference, after Plaintiff presented to an emergency room on **August 8, 2014**, with a primary complaint of anxiety and also reported a history of IBS (*see* tr. 390, 392); and (4) page 468 shows IBS listed as a diagnosis by consultative examiner on **March 27, 2015**, again evidently based on Plaintiff's statements (*see* tr. 467).  *See* Moore v. Barnhart, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) ("the mere existence of [] impairments does not reveal the extent to which they limit [the claimant's] ability to work or undermine the ALJ's determination in that regard") (citation omitted); *see also, e.g.*, Salles v. Comm'r of Social Security, 229 F. App'x 140, 145 (3d Cir. 2007) (diagnoses alone insufficient to establish severity at step two).   Plaintiff must present evidence demonstrating that the condition significantly limited her ability to do basic work activities.[4]   Other than to point to her own testimony, which the ALJ properly discounted, Plaintiff has not done so.  Finally, Plaintiff admitted she had no imaging tests performed to diagnose IBS, had not been to an emergency room for her IBS, and took no medications for IBS but instead tried to control it with probiotics and her diet

---

[3] Notably, at the time Plaintiff made these statements to the P.A., she also reported that she was no longer able to work and "want[ed] to apply for disability" (tr. 357).

[4] The evidence actually suggests that IBS did *not* interfere with Plaintiff's ability to work, given that Plaintiff reportedly suffered from IBS as early as 2003, yet earnings records and other evidence show she worked through 2008 (*see, e.g.*, tr. 163).

Case No.: 3:17cv410/RV/EMT

(tr. 208). All of this undermines any finding that Plaintiff's IBS was severe. For all of these reasons, the ALJ did not err at step two concerning Plaintiff's IBS, and Plaintiff is not entitled to relief on this claim.

### 2. Anxiety and Depression

As before, any error by the ALJ in failing to deem Plaintiff's anxiety and depression severe is harmless because at step two the ALJ determined that Plaintiff had other severe impairments. *See, e.g.*, Ball v. Comm'r of Soc. Sec. Admin., 714 F. App'x 991, 993 (11th Cir. 2018) ("even if the ALJ should have determined that Ball's depression was severe, any error was harmless because the ALJ determined that her compression fracture, spur formation, and lumbar fractures were severe, which allowed the ALJ to move on to step three") (citing Jamison, 814 F.2d at 588; Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983) (concluding that error was harmless where it did not impact result of the step being challenged); 20 C.F.R. § 404.1520(a)(4)). In any event, the court finds no error, because the ALJ properly applied the "special technique" in evaluating Plaintiff's mental impairment(s) and properly concluded that Plaintiff had no severe mental impairment, as explained next.

The regulations require that mental impairments be evaluated in accordance with 20 C.F.R. § 404.1520a[5] which describes the "special technique" that requires the ALJ to first evaluate "your pertinent symptoms, signs and laboratory findings to determine whether you have a medically determinable mental impairment(s) . . . .  If we determine that you have a medically determinable mental impariment(s), we must specify the symptoms, signs and laboratory findings that substantiate the presence of the impairment(s) and document our findings . . . ."  20 C.F.R. § 404.1520a(b)(1). The ALJ must then evaluate the degree of functional loss resulting from the impairment in the four areas of: (1) activities of daily living; (2) social functioning; (3) concentration, persistence or pace; (4) episodes of decompensation.  20 C.F.R. § 404.1520a(c)(3).  The regulations set forth a five-point scale to rate the degree of limitation in the first three functional areas (none, mild, moderate, marked and extreme) and a four-point scale to rate the degree of limitation in the fourth functional area (none, one or two, three, four or more).  If the degree of limitation in the first three areas is "none" or "mild" and "none" in the fourth area, an ALJ may properly find that a mental impairment is non-severe, provided there is no evidence to the contrary. *See* 20 C.F.R.§ 404.1520a(d)(1).  If an ALJ finds a mental impairment

---

[5] Section 404.1520a was amended in 2017.  In this Report the court uses the version in effect at the time the ALJ considered Plaintiff's claim.

Case No.: 3:17cv410/RV/EMT

severe, however, the ALJ must then determine whether the impairment meets or is equal to a listed mental impairment. Finally, the ALJ's written decision must incorporate pertinent findings and conclusions based on use of the special technique, and the ALJ's decision "must include a specific finding as to the degree of limitation in each of the functional areas . . . ." 20 C.F.R. § 404.1520a(e)(4).

Applying the special technique here, the ALJ found that Plaintiff's depression was non-severe because it caused no more than mild limitations in the first three functional areas and no episodes of decompensation in the fourth area (*see* tr. 24). Plaintiff asserts error, primarily because the ALJ did not specifically address or mention her anxiety (*see* ECF No. 11 at 16[6]). It matters not, however, whether the ALJ mentioned Plaintiff's anxiety, because—in applying the special technique—the ALJ would have reached the same findings regardless of the label he used to describe Plaintiff's mental impairment(s), given that his findings in the four areas were based on the exhibits of record, not on the nature of Plaintiff's diagnosis.

Moreover, Plaintiff herself minimized the severity of her anxiety. She testified she took no medications for anxiety and that being "sick" is what caused her to be

---

[6] Secondarily, Plaintiff appears to argue her depression was severe, and the ALJ erred in finding otherwise (*see* ECF No. 11 at 18), but the court finds no error and, again, any error in this regard would be harmless.

Case No.: 3:17cv410/RV/EMT

anxious, not the other way around (*see* tr. 53–54 (Plaintiff's testimony that, "[I]t's not the anxiety causing me to be sick.  It's being sick is [sic] causing the anxiety.")).  She also stated the following about her depression and anxiety when interviewed in connection with her claim for DIB:  "[Plaintiff] doesn't think she has a separate mental impairment.  She feels that any moments of depression or anxiety have to do with her physical problems.  She is not taking med[ication]s.  She saw Dr. Lightfoot [Ph.D., in or about 2007 and 2008] but did not take med[ication]s." (tr. 208).  Plaintiff thus failed to put the ALJ on notice that her anxiety (or depression) was severe or caused anything greater than mild functional limitations.  *See, e.g.*, Street v. Barnhart, 133 F. App'x 621, 627–28 (11th Cir. 2005) (ALJ did not err in failing to include limitations related to mental or intellectual impairments in hypothetical question to VE when claimant did not present evidence that put ALJ on notice of a mental or intellectual limitation on the claimant's functional abilities) (citing Pena v. Chater, 76 F.3d 906, 909 (8th Cir. 1996) ("administrative law judge is under no 'obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability'") (citation omitted)); Leggett v. Charter, 67 F.3d 558, 566 (5th Cir. 1995) (ALJ's duty to investigate does not extend to possible disabilities that are not alleged by the claimant or disabilities that are not clearly indicated on the record).  There is no error at step two.

Case No.: 3:17cv410/RV/EMT

B.    Residual Functional Capacity Determination

Plaintiff contends the ALJ erred in determining she had the RFC to perform the full range of medium work, because this determination was based upon the ALJ's erroneous rejection of the opinions of Advanced Registered Nurse Practitioner ("ARNP") Vicki Merold and of Richard Hawthorne, D.O., a one-time consultative examiner.

Plaintiff's contention as to ARNP Merold warrants little discussion, if any. Attorney Bruni mistakenly supplied the ALJ with a report from Ms. Merold that related to another claimant he represented, **not** to Plaintiff (*see* tr. 486–88). The ALJ evidently did not notice this mistake; had he noticed it, he would not have needed to go through the trouble of discounting the opinions and could have simply disregarded them all together. Any error the ALJ made in discounting opinions that relate to another claimant is obviously of no consequence.

With respect to Dr. Hawthorne, the ALJ assigned little weight to his opinions because he examined Plaintiff outside the relevant time frame (tr. 28). The ALJ did not err in rejecting Dr. Hawthorne's opinions on this basis. Dr. Hawthorne examined Plaintiff on March 27, 2015, long after Plaintiff's date last insured of December 31, 2013, and Dr. Hawthorne did not relate his opinions back to the relevant time frame. *See* Caces v. Comm'r, Soc. Sec. Admin., 560 F. App'x 936, 940 (11th Cir. 2014)

Case No.: 3:17cv410/RV/EMT

(finding ALJ correctly gave little weight to doctor who began treating claimant "long after his date last insured had passed"); Whitton v. Comm'r, Soc. Sec. Admin., 643 F. App'x 842, 846 (11th Cir. 2016) (good cause existed for assigning no weight to opinion of treating psychiatrist who did not treat claimant until one year after her date last insured) (citing Moore, 405 F.3d at 1211 (providing that a claimant must demonstrate disability on or before the date last insured to demonstrate eligibility for disability insurance benefits)).

Moreover, even considering the arguments asserted by Attorney Bruni in his letter to the ALJ, namely, that Plaintiff's disability began in late November 2013 and would be "expected to last" for twelve continuous months from that point forward, Dr. Hawthorne's examination in late March 2015 sheds no light on Plaintiff's condition during that "prospective" relevant period (i.e., from November 2013 through November 2014). In fact, the form Dr. Hawthorne completed specifically states that the limitations assessed on the form are assumed to be opinions regarding *current* limitations, but if he is able to provide opinions "within a reasonable degree of medical probability as to past limitations," to do so and indicate a date as to when the past limitations were first present (*see* tr. 477). Dr. Hawthorne declined to do so (*id.*). It is therefore clear that his opinions concern Plaintiff's limitations only as of March

27, 2015.  Accordingly, the ALJ committed no error in rejecting the opinions of Dr. Hawthorne.

C.      The Opinions of Juanita Fleming, M.D., a Treating Physician

Plaintiff contends the ALJ erred in rejecting the opinions of Dr. Fleming, a physician with the Escambia Community Clinic ("ECC"), where Plaintiff began obtaining treatment in late November 2013.

Substantial weight must be given to the opinion, diagnosis, and medical evidence of a treating physician unless there is good cause to do otherwise.  *See* Lewis v. Callahan, 125 F.3d 1436, 1439–41 (11th Cir. 1997); Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991);  Sabo v. Chater,  955 F. Supp. 1456, 1462 (M.D. Fla. 1996); 20 C.F.R. § 404.1527(c).  "'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."  Phillips v. Barnhart, 357 F.3d 1232, 1240–41 (11th Cir. 2004) (citation omitted).  The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.  *See* Edwards, 937 F.2d at 580 (finding that the ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements).  Where a treating physician has

merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See* Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also* Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987). When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on: 1) the length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) medical evidence supporting the opinion; 4) consistency with the record as a whole; 5) specialization in the medical issues at issue; and 6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c).

Here, in assigning "little weight" to Dr. Fleming's statements, the ALJ stated:

> Dr. Flemming [sic] does not specify any limitations in [Plaintiff's] functioning and does not note any particular condition that has been of lasting duration during the period prior to [Plaintiff's] date last insured. She notes [Plaintiff's] complaints, but does not report any case specific limitations or clinical findings. These statements are also noted to be issued outside of the relevant period and as such, their relevance is limited.

(tr. 28).

The ALJ's reasons are supported by substantial evidence in the record. Dr. Fleming did not limit or otherwise restrict Plaintiff's activities, and she specifically

declined to make a determination on Plaintiff's "true ability to work," because she does not perform functional RFC examinations or complete RFC questionnaires for her patients (tr. 489).  Moreover, Dr. Fleming's treatment notes do not establish that Plaintiff suffered from a disabling impairment of lasting duration (during the relevant period or which began during the relevant period and could be expected to last for twelve months forward from November 2013).

What is more, Plaintiff reported a host of problems to Dr. Fleming on her first visit (*see* tr. 446, 456–57 (two-page list of problems provided by Plaintiff)), which Dr. Fleming described as an "extensive list of ailments that [had] been going on for years" (tr. 446).  Dr. Fleming noted that all of those problems could not be addressed during her first, fifteen-minute appointment with Plaintiff and that Plaintiff would have to sign a release so that she (Dr. Fleming) could obtain Plaintiff's earlier treatment records and "pick up where [the] previous provider left off" (*id*.).  However, Plaintiff never signed a release or otherwise provided prior treatment records to Dr. Fleming. As a result, Dr. Fleming noted she could not confirm some of Plaintiff's self-reported prior diagnoses, given that "previous records from different provider [were] never received . . . ." (tr. 489).  Thus, although Dr. Fleming was able to diagnose and treat Plaintiff for some conditions, for example high blood pressure, she could not confirm that Plaintiff was previously diagnosed with all the conditions that Plaintiff had self-

reported. Regardless, it is of little consequence whether any one diagnosis reported by Plaintiff was confirmed, as a diagnosis alone is insufficient even to establish severity at step two, much less a diagnosis that was made after the relevant time period where much of Dr. Fleming's diagnoses of record are found.

Last, Dr. Fleming's *only* treatment note from within the relevant time frame shows generally mild conditions, as well as reports by Plaintiff that overall she felt generally well despite some occasional pain or discomfort. More specifically, on November 20, 2013 (Plaintiff's first visit to the ECC, when she gave Dr. Fleming the two-page list of purported ailments), Plaintiff stated she felt well, had minor complaints, and was there mainly to establish care (tr. 446). Plaintiff did report some knee pain, but she stated it was improving (tr. 446), and x-rays of the knee revealed minimal abnormalities (tr. 448). Plaintiff also reported some back and neck "discomfort" (tr. 446) but again x-rays showed only mild DDD (tr. 453, 438).[7]

For these reasons, the court finds the ALJ articulated good cause for failing to fully adopt the opinions of Dr. Fleming, and Plaintiff is not entitled to relief on this claim.

---

[7] The knee x-rays were taken in November 2013 (tr. 458), but the back x-rays were taken after the relevant period in March 2014. The latter are still relevant, given that back conditions tend to worsen over time. Thus, a mild back condition after the relevant period certainly suggests a mild, non-disabling back condition during the relevant period.

D.    Past Relevant Work

Plaintiff claims the ALJ erred in determining that her prior work as a real estate agent constituted past relevant work ("PRW"), "given that Plaintiff's salary was below the level at which SGA [substantial gainful activity] work is presumed, Plaintiff had performed such work for a period well in excess of 15 years, and the ALJ did not determine the time, energy, skill, and responsibility Plaintiff devoted to this job during the relevant 15-year period that can qualify as past relevant work" (ECF No. 11 at 1–2).

The ALJ determined at step four of the sequential evaluation that Plaintiff was not disabled because she could return to her PRW as a real estate agent. The court will thus review the relevant evidence of record as it relates to this past work.

At Plaintiff's hearing before the ALJ, Plaintiff was represented by Attorney Bruni, and Bruni gave an opening statement during which he relied upon two exhibits to argue that Plaintiff could not return to her past work *as a real estate agent* and thus that the ALJ would have to consider (at step five) whether she was disabled under the criteria of the Medical-Vocational Guidelines, or "Grids" (*see* tr. 49–50). The ALJ then questioned Plaintiff about her work as a real estate agent, which Plaintiff stated she performed for twenty-six years (tr. 50). The ALJ asked Plaintiff about her yearly earnings records from 2003–2004 and from 2006–2008, all of which showed that she

made exactly the same amount of money, $5,000 (tr. 50–51).  Plaintiff explained that during those years she worked with Neal and Associates, a real estate brokerage firm, which she and her husband owned and ran; Plaintiff noted she was the "majority stockholder" (tr. 50–51, 62).  Plaintiff "guessed" that the $5,000 annual income represented her salary but "thought" she made money in addition to that salary, such as commissions (tr. 51).  Plaintiff then backtracked a bit and stated that perhaps her commissions went "to the company" or into savings plans instead of to her personally (*see id.*).[8]

Plaintiff also completed work history reports where she described her long-term work in the real estate field as involving "sales" (*see, e.g.*, tr. 176, 234) and as involving ten-hour days, seven days per week (*see, e.g.*, tr. 177).  In further describing this past work, Plaintiff stated that she sold homes, apartments, and condominiums; interviewed potential buyers; showed properties and discussed their features and sales terms; and drafted sales contracts (tr. 235).  She also noted that she supervised people, hired and fired people, and considered herself to be a "lead worker" for the firm (*id.*).  Similarly, on another report Plaintiff described her work with Neal and Associates as

---

[8] Other earnings records from around the same time frame generally show slightly more or slightly less annual income (*see* tr. 163 (showing, for example, annual income in the amount of $3,750 in 2002, and $5,175.51 in 2005).

follows: "sales, management, bookkeeping, day to day operations of business, property management, and maintenance" (tr. 266).

During Plaintiff's hearing the Vocational Expert ("VE") characterized Plaintiff's past work under the Dictionary of Occupational Titles as a "Real Estate Agent," DOT #250.357-018, a job that is performed at the light level of exertion and which requires a person to be on her feet for six hours in an eight-hour workday and additionally requires some interpersonal and other non-physical job skills, such as judgment and decision-making skills (tr. 63–64).

Attorney Bruni was given an opportunity to question the VE.  He asked questions related to physical requirements of the real estate job and about transferable job skills but no other questions (tr. 65).

Past relevant work is work that (1) occurred within the past fifteen years (the recency requirement), (2) was of sufficient duration to enable the worker to learn to do the job (the duration requirement), and (3) was substantial gainful employment. 20 C.F.R. § 404.1565(a).  Plaintiff concedes, and the record shows, that her work as a real estate agent meets the recency requirement.  The work also was of more than sufficient duration for Plaintiff to learn the job, given that she performed it for twenty-six years.  Thus, the instant claim turns on whether her past work constituted substantial gainful activity.

To qualify as SGA, work must meet a minimum wage threshold during the relevant past (i.e., during the prior fifteen years).  *See* 20 C.F.R. § 404.1560(b)(1); SSR 82–62, 1982 WL 31386, at *2.  Work is substantial if the work activity "involves doing significant physical or mental activities."  20 C.F.R. § 404.1572(a).  Work is gainful if it is done for pay or profit.  *Id*. § 404.1572(b).  Plaintiff does not dispute that her work was substantial; rather she argues she did not earn enough for it to constitute "gainful" employment.

The monthly earnings amounts deemed to constitute "gainful" activity for purposes of determining a claimant's past relevant work are:  (a) $500 for the first half of year 1999; (b) $700 for the second half of year 1999 and for year 2000; (c) $740 for year 2001; (d) $780 for year 2002; (e) $800 for year 2003; (f) $810 for year 2004; (g) $830 for year 2005; (h) $860 for year 2006; (i) $900 for year 2007; and (j) $940 for year 2008.[9]  *See* 20 C.F.R. § 404.1574(b)(2) (establishing earnings that will ordinarily show a claimant has engaged in SGA); *see also* Social Security Online, Substantial Gainful Activity, http://www.ssa.gov/oact/cola/sga.html (indicating monthly earnings amounts) (last visited July 2, 2018).

---

[9] Plaintiff reported on at least one work history report that she worked through a portion of 2008 (*see* tr. 266).

Thus, based only on Plaintiff's personal earnings records (showing total annual income around $5,000), her past work would not appear to meet the minimum income threshold requirements for SGA.  However, this court is required to look at the record as a whole to determine whether the ALJ's findings are substantially supported by the record.  Having done so, the court concludes that those findings are supported by the record and that the ALJ did not err in determining at step four that Plaintiff's past work as a real estate agent constitutes past relevant work.

First, Plaintiff's testimony indicates she received commissions in addition to the $5,000 she received as "salary."  Such is typical for real estate agents, just as tips are for restaurant servers, who customarily receive a lower hourly wage than workers who receive no tips.  Furthermore, Plaintiff testified that the commissions were paid "to the business" that she jointly owned with her husband, so ultimately she would benefit from any profit the business enjoyed, even though the profits are not reflected on her personal earnings records—which are the only earnings records in Plaintiff's claims file.

Second, Plaintiff's past work was *worth* the minimum income threshold requirements for SGA when considered in terms of its value to her firm's business, much like a Nebraska district found when faced with a claimant who owned his own company and had minimal net income during the pertinent period:

Although the evidence shows that Dierks [the claimant] had relatively little net income during 1994 and 1995 after subtracting various self-employment expenses, it is clear that: (1) Dierks' work as a registered professional engineering consultant for the City of Chadron and other private clients, and as the owner of a manufacturing company, required significant mental activities, even though he engaged in such activities on a part-time basis; (2) such work was done for pay or profit, whether or not a profit was actually realized; (3) Dierks' experience, skills, responsibilities, and registration as a professional engineer contributed substantially to the operation of his consulting and manufacturing businesses since he was the sole participant in these businesses; and (4) although Dierks received little net income in 1994 and 1995, Dierks' work activity was worth $500 per month "*when considered in terms of its value to the business,*" 20 C.F.R. § 404.1575(a)(2) (emphasis added), especially when considering that (a) the City of Chadron and other private clients were willing to pay Dierks $40.00 per hour for his engineering services (an indication of the value of Dierks' professional services to his business), and (b) Dierks' net income in the first two years of his new businesses is not an accurate representation of the value of his services to his business. 20 C.F.R. §§ 404.1572, 404.1573, 404.1575.

Dierks v. Apfel, 63 F. Supp. 2d 1028, 1032–33 (D. Neb. 1999).

Here, as in Dierks, Plaintiff was a registered professional. She co-owned, managed day-to-day operations, and was the primary shareholder in a real estate brokerage firm. She also held a real estate license; worked ten-hour days, seven days a week; engaged in all phases of real estate sales; made hiring and firing decisions; and performed bookkeeping and accounting services for her firm. She clearly worked for pay or profit, whether or not a substantial profit was actually realized. Her experience, skills, responsibilities, and registration as a licensed real estate agent

contributed substantially to the operation of the firm she co-owned with her husband, and her work activity was worth far more than $500–$940 per month, when considered in terms of its value to the business. *See also, e.g.*, Johnson v. Sullivan, 929 F.2d 596 (11th Cir. 1991) (affirming termination of benefits because claimant found to be engaging in SGA as licensed surveyor from home; his experience, license, and mental contribution to business were substantial and enabled the business to continue, even though he was relegated to drawing maps and signing plats made by family members participating in the business; noting that income is less reliable as indicator of "substantial" nature of work when claimant is self-employed; claimant had income of $800 per month); Rollins v. Shalala, 19 F. Supp. 2d 1100 (C.D. Cal. 1994) (affirming denial of benefits for substantial gainful activity when self-employed dentist working two days per week grossed $4,000 per month, indicating significant value of dentist's services, but consistently operated at a loss due to expenses), *aff'd*, 77 F.3d 490, 1996 WL 62687 (9th Cir. 1996) (table); Strahan v. Shalala, No. H–93–2057, 1994 WL 543029 (S.D. Tex. June 16, 1994) (affirming Secretary's decision that claimant was engaged in SGA when he owned and operated a television transmitter, but operated at loss, when claimant failed to present documentary evidence showing that his services were not worth at least $300 per month; ALJ properly found it was claimant's intent to operate business for profit, even if television

station was operating at a loss; "Work may be gainful even if no profit is realized if it is of the kind usually done for pay or profit."); Barber v. Sullivan, 765 F. Supp. 58 (W.D.N.Y. 1991) (affirming ALJ's alternative finding that home insurance agency in which plaintiff—a licensed insurance agent—worked from four to eight hours per month was SGA under 20 C.F.R. § 404.1575(a)(2) when considered in terms of value to business because plaintiff's business depended upon his singular role as business decision-maker); 20 C.F.R. § 404.1572(b) (gainful work is work that is *usually* done for pay or profit regardless of whether a profit is actually realized) (emphasis added); 20 C.F.R. § 404.1575(a)(2) (in evaluating work activity if you are self-employed, "[w]e will consider your activities and their value to your business to decide whether you have engaged in [SGA] . . . .").

Third, it is the claimant who bears the burden of proving that her work experience was not past relevant work.  *See* Barnes v. Sullivan, 932 F.2d 1356, 1359 (11th Cir. 1991).  "The necessary consequence of this burden is that the claimant has the burden of showing that certain work experience is not past relevant work."  *Id*. (citation omitted).  Here, as in Barnes, Plaintiff offered no evidence and presented no argument at her hearing before the ALJ to suggest that she in any way disputed the fact that her prior work of twenty-six years in real estate sales constituted PRW.  To the contrary, her own attorney characterized the work as such, in inviting the ALJ to

proceed to step five of the sequential evaluation and in contending that Plaintiff could not return to her past work due to the physical demands of the work, combined with Plaintiff's advancing age (*see* tr. 49–50). *See, e.g.*, Street, 133 F. App'x at 627 ("it has been persuasively held that an 'administrative law judge is under no obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability'") (quoting Pena, 76 F.3d at 909) (internal quotation and citation omitted). Put simply, Plaintiff failed to prove that her work as a real estate agent was not substantial gainful activity, and the ALJ did not err in determining that it was and that Plaintiff could return to that work and perform it. Plaintiff therefore is not entitled to relief on this claim.

## VI.   CONCLUSION

For the foregoing reasons, the Commissioner's decision is supported by substantial evidence and should not be disturbed. 42 U.S.C. § 405(g); Lewis, 125 F. 3d at 1439; Foote, 67 F.3d at1560. Furthermore, Plaintiff has failed to show that the ALJ applied improper legal standards, erred in making his findings, or that any other ground for reversal exists.

Accordingly, it is respectfully **RECOMMENDED**:

1.      That the decision of the Commissioner be **AFFIRMED**, and that this action be **DISMISSED**.

Case No.: 3:17cv410/RV/EMT

2.      That **JUDGMENT** be entered, pursuant to sentence four of 42 U.S.C.

§ 405(g), **AFFIRMING** the decision of the Commissioner.

3.      That the Clerk be directed to close the file.

At Pensacola, Florida this 6th day of July 2018.


/s/ *Elizabeth M. Timothy*

**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**